BRYAN *v.* CRAIG.

Opinion delivered November 13, 1897.

RESULTING TRUST—WHEN ARISES.—When an administratrix, in settlement of litigation concerning lands claimed by her as part of her intestate's estate, takes a quit-claim deed to herself from the adverse claimant, without any consideration passing from herself, she will be held in equity a trustee for the benefit of the estate. (Page 441.)

ADMINISTRATRIX—POWER TO BIND ESTATE.—An administratrix has no power to bind the estate by an agreement to convey to an attorney a part of the estate as compensation for his professional services in defending an action for possession of land of the estate and in prosecuting an action to remove a cloud upon the title to said land. (Page 442.)

Appeal from Chicot Chancery Court.

JAMES F. ROBINSON, Chancellor.

STATEMENT BY THE COURT.

Action of ejectment by Sarah E. Green and others to recover from Robert E. Craig the possession of a tract of land in Chicot county, known as "Pastoria Place."

The facts in the case, so far as it is necessary to state them, are as follows: One L. C. Bryan, the former husband of Mrs. Green, one of the appellants, was in 1881 the owner of the land in controversy. He and his brother, J. E. Bryan, had for some years been engaged in mercantile and farming business in Chicot county under the firm name of L. C. Bryan & Co. In the course of this business the said firm had become indebted to J. L. Harris & Co., merchants of New Orleans, La. To secure this indebtedness, the firm of L. C. Bryan & Co. executed a trust deed to one Carleton, as trustee, conveying to said trustee, besides real and personal property of said firm of L. C. Bryan & Co., also the Pastoria place and other valuable property belonging to L. C. Bryan individually. L. C. Bryan died in January, 1882, and shortly afterwards the property conveyed by the trust deed was sold by the trustee under the power contained in said deed, and purchased by J. H. Harris & Co. in part satisfaction of their debt. Said Harris & Co. afterwards commenced an action of

ejectment against the widow of L. C. Bryan to recover from her possession of the land in controversy purchased by them at the trustee sale. Mrs. Bryan, now Mrs. Green, resisted said action of ejectment, and, having been appointed administratrix of her husband's estate, she, as such administratrix, and in her own right as widow, also commenced an action in the federal court against said Harris & Co. She alleged in said action that said Harris & Co. had disposed of a large quantity of cotton belonging to the firm of L. C. Bryan & Co., that the property conveyed by the trust deed was sold without being properly appraised, that at the time of the appraisement the Pastoria place and other land were submerged by an overflow of the Mississippi river, and could not be properly appraised, and that the cotton and other personal property sold by Harris & Co. was more than sufficient to pay off the entire debt secured by the deed of trust, and that the sale of the Pastoria place and other land was unnecessary. Whereupon she prayed that the sale of the personal property be set aside, that Harris & Co. be charged with the full value thereof, and that the " sale of said Pastoria plantation and said Sanders place be set aside and held for naught, and the title acquired by said J. H. Harris & Co., the purchasers at said sale, be cancelled, and the cloud created by said sale removed." The defendant (Craig) and D. H. Reynolds were the attorneys for Mrs. Bryan in this litigation. Afterwards in April, 1886, both of the actions, the one in ejectment and the one to set aside the sale under the trust deed, were compromised. In the compromise, Harris & Co. agreed that if another action in reference to some of this same property, brought against them by third parties, should be decided in favor of said Harris & Co., they would convey to Mrs. Bryan the Pastoria and Sanders places in settlement of the two actions pending between them. This agreement to compromise was afterwards carried into effect, and the land in controversy was conveyed by quitclaim deed from Harris & Co. to Mrs. Bryan. This is the title upon which Mrs. Bryan (now Mrs. Green) based her action of ejectment against Craig in this case. The defendant, Craig, for answer to the action of Mrs. Green, alleged that, after the execution of the deed from Harris & Co. to her, he purchased the land in con-

troversy from her for the consideration of $2,000. He alleged that, at the beginning of the litigation beween Mrs. Green and Harris & Co., she had no money, and did not wish to incur further expenses. It was therefore agreed between her and himself, as her attorney, that he and D. H. Reynolds would conduct the litigation upon a contingent fee. In the event they were successful, they were to receive one-half of the property or money covered by the law suit; but if they recovered nothing, they should charge nothing. He alleged that the property in controversy was the fruits of the law suit, and was valued at $2,000; that Mrs. Green did. not want the property, so he agreed to take the property, and pay her one thousand dollars for her half interest, and to pay Reynolds a fee of $500, she agreeing to have the property conveyed to him. He further alleged that he took possession of the land under this contract, paid to Reynolds a fee of $500, and was ready and willing to perform his contract in all respects; but that she had repudiated the same, and refused to convey the land to him. He asked that the cause be transferred to the equity docket, and that she be compelled to perform said contract, etc.

The case was transferred to the equity docket, and Mrs. Green filed her reply, denying the allegations of the answer of Craig. She also demurred to the answer on the ground that it stated no defense to her action. Afterwards, Mrs. Green, pending the litigation, conveyed her interests in said land to J. E Bryan and other heirs of her deceased husband. She having married Green, her present husband, her letters of administration were revoked, and J. E. Bryan was appointed administrator *de bonis non* of said estate.

Afterwards said Bryan, as administrator *de bonis non*, and in his own right as heir, and the other heirs of L. C. Bryan, were made parties plaintiff with Mrs. Green. Upon the hearing, the chancellor found in favor of the defendant, Craig, and decreed that the lands in controversy were held by Mrs. Green under the conveyance from Harris & Co. to her in trust for Craig; that he should retain possession of said lands; and that his title thereto should be quieted. He further decreed that Craig should pay to the plaintiffs $1,000, with six per cent.

interest from March 5, 1889, etc. From this decree plaintiffs appealed.

*J. H. Connerly*, for appellants.

The administratrix had no power to make the contract to give one-half of the amount or land recovered to her attorneys as their fee. 38 Ark. 147; 31 Ark. 334; 21 Ark. 62; 21 Ark. 347. Appellees had no lien on the property. 47 Ark. 86; 30 Ark. 44.

*Robt. E. Craig, pro se*, and *D. H. Reynolds*, for appellee.

The common-law right of the personal representative to employ attorneys, when such a course is necessary for the preservation of the estate, still exists in many cases, even though no order from the probate court was obtained authorizing such employment. 38 Ark. 146; 49 Ark. 235, and cases cited; 35 Ark. 267, 268; 30 Ark. 312; 35 Ark. 268; 38 Ark. 145. The fee was reasonable, and the executrix had power to make the contract.

RIDDICK, J., (after stating the facts.) This is a controversy concerning the title and right to the possession of a tract of land in Chicot county known as "Pastoria Place." The land at one time belonged to L. C. Bryan, now deceased, and the appellee, Craig, claims to have purchased it from appellant, Mrs. Green, who was the widow of said Bryan, and administratrix of his estate. Mrs. Green denied that she sold or agreed to sell the land to Craig, but, as the evidence on that point was conflicting, the finding of the chancellor may be taken as settling that point in favor of Craig.

But the heirs of L. C. Bryan and the administrator *de bonis non* of his estate are parties to this action with Mrs. Green, and if we assume that it is true, as alleged by Craig, that Mrs. Green agreed to convey him this land, it becomes necessary to · consider the extent of her interest in said land, and whether the estate and heirs of L. C. Bryan are in anyway affected by her contract to convey.

As set out in the statement of facts, L. C. Bryan, the former owner of this land, executed a trust deed upon it to secure a debt he owed Harris & Co., merchants of New Orleans.

Shortly afterwards he died, and the land was sold under the power contained in the trust deed and purchased by Harris & Co. But the widow and administratrix of Bryan refused to give possession, and Harris & Co. instituted an action at law to recover possession of the land. She resisted this action, and also brought another action in the federal court to set aside the sale of the personal and real property made under the trust deed, to compel Harris & Co. to account for the proceeds of the personal property, and to remove the cloud upon the real estate caused by the sale thereof under the deed of trust. The result of this action to set aside the sale under the trust deed and to compel Harris & Co. to account for the proceeds of the personal property was that Harris & Co. compromised by reconveying the land to Mrs. Bryan. Now the conduct of Harris & Co. in reconveying the land to Mrs. Bryan was to that extent a recognition of the justness of the contention made by her and her counsel, of whom appellee, Craig, was one, that the sale of the land under the trust deed was unnecessary and invalid. They, in effect, conceded that her action to set aside the sale of the land under the trust deed was well founded, and executed a quit-claim deed conveying the land to her, in settlement of the controversy. Mrs. Bryan paid Harris & Co. nothing for the land conveyed to her by them. She was the administratrix of the estate of Bryan, and represented the estate in the litigation against Harris & Co. If Harris & Co. acquired any title to the land by virtue of their purchase at the sale under the trust deed, yet, when they reconveyed it to her in settlement of an action pending against them in behalf of the estate of Bryan, she took it in trust for said estate and the heirs of Bryan, subject of course to her rights therein as widow of said Bryan. In equity, if not in law, the land belongs to the heirs of Bryan, subject to the rights of his creditors and to her rights as widow. She had no greater interest therein than if the trust deed had been satisfied without a sale of the land. This seems too plain for controversy.

But, as this land belonged to the estate of Bryan, the administratrix had no power to bind the heirs and creditors of said estate by a contract for sale thereof, except as provided by statute. The fact that the title to this land was involved in litigation, and that it had been purchased at a sale under the

trust deed by Harris & Co., who were claiming it adversely to the estate, does not alter the rule; for an executor or administrator has no power to bargain with an attorney to give him a legal interest in the estate as compensation for his services, so as to bind the estate. *Pike* v. *Thomas*, 62 Ark. 223; *Tucker* v. *Grace*, 61 *ib.* 410; *Teal* v. *Terrell*, 48 Texas, 491; *Austin* v. *Mauro*, 47 N. Y. 360; *Platt* v. *Platt*, 105 N. Y. 488; Schouler's Executors, §§ 256, 257, and note.

If Mrs. Green had been successful in both cases, the attorneys under the statute could in no event have had a lien upon the land; for in one case they were defending an action for possession, and in the other they were prosecuting an action to remove cloud on the title of said land. *Hershy* v. *DuVal*, 47 Ark. 86; *Greer* v. *Ferguson*, 56 Ark. 324. And we have said that Mrs. Green had no power to give them a lien by contract.

The opinion in the case of *Wassell* v. `Armstrong*, 36 Ark. 268, cited by counsel for appellee, was based upon the peculiar facts of that case; but if it were true that it laid down a rule contrary to what we have announced herein, it would be in conflict, not only with several later cases decided by this court, but with well established rules of law, and could not be followed. An executor or administrator has, in common with other trustees, a lien upon the assets in his possession for proper expenses paid out by him, including reasonable attorney's fees, when the same become necessary to protect the estate. But this lien is for the benefit of such representative, rather than the person with whom he contracts. (Schouler's Executors, § 257.) We have held in several recent cases that he has no power to enlarge the debts of the estate, or to create liens upon or bind the assets thereof by his contracts. He may bind himself, but not the estate. *Pike* v. *Thomas*, 62 Ark. 223; *Tucker* v. *Grace*, 61 Ark. 410.

In this case whatever rights Craig may have under his contract with Mrs. Green are against her individually, for she could not bind the estate or the heirs of Bryan by her contracts. But we are not able to say from the record that Mrs. Green had any interest in this land, which the court found she agreed to convey. Her dower interest in the estate of her de-

ceased husband, L. C. Bryan, may have already been assigned to her out of other lands, so it does not appear that Craig is entitled to any relief against her in this proceeding, from the record before us.

Our conclusion is that the decree of the chancellor to the effect that Mrs. Green held this land in trust for Craig is not supported by the facts of the case. It is therefore reversed, and the cause remanded, with an order that a decree be entered in favor of the administrator *de bonis non* and heirs of Bryan for the possession of the land in controversy, and for such further proceedings as may be necessary to determine the rights of the parties as to rents, taxes, improvements, etc., and without prejudice to any rights of Craig existing by virtue of his contract against Mrs. Green individually.

BUNN C. J., (dissenting.) This was a suit, originally in ejectment, by appellant, Sarah E. Green, against appellee, Robert E. Craig, in the Chicot circuit court, and plaintiff claimed title absolute and in fee by deed from J. L. Harris & Co., which she filed with her complaint, as required by statute. J. L. Harris & Co. held as purchasers at trustee's sale and under deed made in pursuance thereof, and this sale was made under the provisions of a deed of trust, made by L. C. Bryan, former husband of plaintiff, to the trustee to secure a debt due hy him and others to J. L. Harris & Co. of about $40,000, in which deed of trust plaintiff, the then wife of L. C. Bryan, the grantor, had relinquished her dower right in the property conveyed. On the answer and petition and answer of defendant, the cause was transferred to the chancery court of the district.

The original complaint was filed and suit brought on the 27th of September, 1889. On the 10th of September, 1892, about three years after the complaint and answer were filed, plaintiff having made her quit-claim deed to her co-defendants, denominating them the heirs at law of her former husband, the said L. C. Bryan, and naming one of these heirs, Joel E Bryan, as the administrator of L. C. Bryan, these heirs and administrator, nominally as such, petitioned to be made parties plaintiff, exhibiting their deed from plaintiff as a basis of their title and evidence of interest in the litigation; and they were made part-

ies accordingly, but probably proceeded no further, relying on the state of case made by their co-plaintiff, Sarah E. Green.

The deed from Sarah E. Green, in its recitals, in effect was an effort to disclaim absolute title in Sarah E. Green, and to restrict her title to that which she had received from J. L. Harris & Co., which, in so far, was correct. But it then, in effect, proceeds to name the grantees, the heirs and administrator of L. C. Bryan, as if these relations to L. C. Bryan formed the consideration for which she made the deed, and this had the effect, as nearly as could be made, of turning the property in controversy back into the estate of L. C. Bryan. This was necessary in order to render plaintiff's deed from J. L. Harris & Co. not what it purported to be on its face, and what it was filed in this suit to indicate, but as a deed to her as dowager and administratrix of the estate of her deceased husband, the said L. C. Bryan. Now, it is evident that J. L. Harris & Co. made no such deed, and never intended to do so. Their deed was simply from them as absolute owners, and to her individually and absolutely, and, treating it as such, upon it she instituted this suit, relying upon it to acquire the land for herself. To give plausibility to this arrangement, it was contended that the consideration of her deed from J. L. Harris & Co. was the settlement of certain litigation she, as administratrix of the estate of L. B. Bryan, had with them, pending at the time. She would thus make it appear that her dealings with J. L. Harris & Co. were in fraud of the rights of the heirs and creditors of said estate, and actually makes this kind of a case out in her transfer to said heirs and administrators of L. C. Bryan three years after she had brought suit for herself. The decree of reversal has the effect of sanctioning this arrangement of the plaintiffs among themselves long after this suit was instituted.

Had decree been rendered in the lower court before she made the deed to her co-plaintiffs, and in her favor, the heirs and estate of L. C. Bryan would have had nothing, and she all. They all seemed to understand that the estate was utterly insolvent. She, having obtained the deed from J. L. Harris & Co., was for that reason, and for that alone, able to convey something to these heirs. They, therefore, can claim nothing,

and do not pretend to claim anything, except just such as her deed to them conveyed, and that expressly conveyed to them just what J. L. Harris & Co. had conveyed to her—nothing more, nothing less. If, then, the deed which J. L. Harris & Co. made to her was fraudulent and invalid, because it conveyed to her individually, and not as administratrix, then is her deed to these heirs and this administrator invalid also; and yet these heirs and this administrator dare not rely on any other title.

It may be contended (and that is the only contention that can be made) that plaintiff, in making her deed to her co-plaintiffs, was only endeavoring to correct a wrong of which she had been guilty in accepting an individual deed from J. L. Harris & Co. There are two obstacles to this kind of a claim; one is that the suit was begun and prosecuted on the theory that she claimed the property individually, as her deed showed her to be entitled to claim; and the other is that Craig's rights, claiming and holding under her as such individual and absolute owner, could not be prejudiced by any charge of fraud on her part, and another is that when she instituted the suit she could not sue for the heirs or the estate, nor for herself as dowager, as she had not set aside his deed of trust.

This case does not go off on any want of merit in Craig's claim, as I understand it, but purely and solely because Mrs. Green, while administratrix of L. C. Bryan's estate, had no right to compromise the matters of the estate with J. L. Harris & Co. for her personal benefit, and therefore that her deed from them could only in fact be to her as dowager and as administratrix. It is only necessary to say that, in my opinion, the facts in the case and the equities of the case do not justify such a conclusion as that she or the heirs or estate had any real interest in the land when she arranged with J. L. Harris & Co. to acquire title for herself.

The cause should have been affirmed as against Mrs. Green and her co-plaintiffs, holding as they do under her, but without prejudice to any right they may have as holding under L. C. Bryan as heirs or legal representatives; for, as the record and pleadings now are, the court cannot say but that the estate was divested of every thing by the foreclosure of J. L. Harris & Co.'s deed of trust.